UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN WIGGS,<br><br>      Defendant. | Case No. 26-MJ-132 |

<u>**UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**</u>

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm), as Stephen Wiggs (the "Defendant"), is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year). The evidence presented to the Court shows that the Defendant poses a demonstrated danger to the public if he were released.

As outlined in the Pretrial Services Report for the United States District Court (the "Bail Sheet"), the Defendant, now 44 years old, has spent much of his adult life interacting with the criminal justice system. Indeed, the Bail Sheet notes that the Defendant has been arrested 37 times. And of those 37 arrests, 20 resulted in convictions, including a January 14, 2014 conviction for Assault Second Degree in Prince George's County, Maryland Docket Number CA137111. In that case the Defendant was sentenced to 10 years of incarceration with 7 years suspended and two years of probation.[1]

---

[1] In reliance on the D.C. Superior Court Pretrial Services Agency Report ("PSA") for the Defendant, the Statement of Facts in Support of the Complaint for this case states that the Defendant was convicted of "Theft $1k to Under $10k in Prince George's County, Maryland Docket Number 2E00485137 and sentenced to ten (10) years of confinement with seven (7) years

1

The Defendant's conduct in this case is illustrative of the danger that the Defendant presents to the community. His extensive criminal history reflects both an inability and an unwillingness to conform his conduct to the law. Accordingly, considering the Defendant's criminal history, the violent nature of the Defendant's conduct in this offense, and considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community.

For the following reasons, the Court should order the Defendant detained pending trial.

## **BACKGROUND**

On July 30, 2026, at approximately 6:40 p.m., Metropolitan Police Department ("MPD") and federal law enforcement officers responded to a call for service put out over the Seventh District Radio Zone in reference to an individual in possession of a gun in the shopping center parking lot located at 3025 Naylor Road SE in Washington, D.C. The suspect was described as a black male with vitiligo skin, a ski mask, a white t-shirt and printed shorts.

At around 6:42 p.m. (approximately 2 minutes after the call for service), officers observed a black male with vitiligo skin, wearing a white t-shirt and colorful printed shorts (later identified by word of mouth as the Defendant, Stephen Wiggs. The Defendant was walking from the direction of 3025 Naylor Road SE towards 30th Street SE and holding a dog leash in his hand. The Defendant turned left and walked towards 2916 30th Street SE as officers approached.

---

suspended." As part of its investigation, the Government understands that the D.C. Superior Court PSA report listed the incorrect offense. While the Defendant was charged with Theft $1k to Under $10k, he was convicted of Assault Second Degree, as reflected in the District Court PSA report. Nonetheless, the jurisdiction, arrest date, conviction date, and sentence of 10 years of incarceration with 7 years suspended was correct.



**Figure 1. Ofc. Samuel Zambrano-Mora's BWC Showing the Defendant Holding a Dog Leash (Circled in Red).**

As officers approached the Defendant, they observed what appeared to be a tan-colored handgun protruding from the Defendant's left shorts' pocket. As officers continued to get closer to the Defendant, the Defendant moved his left hand[2] down towards his left short's pocket—the location where the tan-colored firearm was subsequently recovered. In response, as captured on police body-worn camera ("BWC"), MPD Officer Matthew Zumbrun yelled, "Hey! Hey! Hey! He's reaching! He's reaching!" (Ofc. Zumbrun BWC at 18:42:35 to 18:42:40). Seconds later, another officer says, "Don't reach for it!" (Ofc. Zumbrun BWC at 18:42:41 to 18:42:43).

The officers' observation is supported by the BWC. At time stamp 18:42:38, the Defendant initially raised both arms in the air as officers approached, as shown in Figure 2 (below). Just one second later, at time stamp 18:42:39, the Defendant lowered his left hand to near his left shorts' pocket, as shown in Figure 3 (below).

---

[2] As noted below, CCTV footage shows the Defendant raising his left hand in the air and firing one round from the firearm.

3

 

*Figure 2. Ofc. Zambrano-Mora's BWC*
*Showing the Defendant's Left Arm Raised*
*(Circled in Red).*

*Figure 3. Ofc. Zambrano-Mora's BWC*
*Showing the Defendant's Left Hand*
*Lowering Towards His Left Pant's Pocket*
*(Circled in Red).*

This is further supported by MPD Officer Nicholas Tomanelli's BWC, which shows the

Defendant's left hand just inches from his left shorts' pocket—where the firearm was ultimately

recovered—at time stamp 18:42:40, as shown in Figure 4 (below).



*Figure 4. Ofc. Nicholas Tomanelli's BWC Showing the Defendant's Left Hand Inches from*
*Where the Firearm was Subsequently Recovered (Circled in Red).*

Additionally, when officers attempted to place the Defendant in handcuffs, the Defendant resisted by pulling away from officers to prevent the handcuffs from being secured around his wrists. The Defendant then forcefully grabbed MPD Officer Samuel Zambrano-Mora's radio and pulled it from his vest. After a struggle, the Defendant was placed into handcuffs and arrested, and Officer Zambrano-Mora safely removed the tan handgun from the Defendant's left shorts pocket.



*Figure 5. Ofc. Matthew Zumbrun's BWC Showing Firearm Recovery from the Defendant's Left Pocket (Circled in Red).*

The firearm was a P80 9mm privately manufactured firearm with no serial number. The firearm had one (1) round of ammunition in the chamber and fifteen (15) rounds of ammunition inside a seventeen (17) round capacity magazine. The recovered ammunition had a head stamp labeled "CBC 9mm LUGER."



*Figure 6. Firearm Recovered from the Defendant's Left Pocket.*

The recovered firearm appeared to be fully functional and operable, able to expel projectiles by means of explosive action, capable of being fired by the use of one hand, and had a barrel length of less than 12 inches.

While law enforcement was stopping the Defendant, officers observed an unleashed black dog running towards officers and then away from them. The Defendant claimed that he was the owner of the dog.



*Figure 7. Ofc. Matthew Zumbrun's BWC Showing Dog Running (Circled in Red).*

6

While the Defendant was in handcuffs and waiting to be evaluated by members of the District of Columbia Fire and Emergency Medical Services Department ("DC FEMS"), officers could smell the odor of alcohol emitting from the Defendant's breath.

MPD Officer Dallas Bennett interviewed the 911 caller ("Witness-1"), who told officers that he saw and heard the Defendant yelling obscenities at another individual ("Witness-2") in the parking lot. Witness-1 further stated that he observed the Defendant produce a tan colored gun from his waist area and point it in the direction of Witness-2 as she walked away. Officers Zambrano-Mora and Zumbrun interviewed Witness-2, who reported that she was walking down the stairs speaking to another individual on the phone when the Defendant began yelling obscenities at her. Witness-2 had never seen the Defendant before this instance, and she did not see the Defendant produce the firearm. A third individual, Witness-3, told Officer Zumbrun that they heard a "pop" after the Defendant was observed walking towards the exit of the parking lot.

MPD 7D Detective Aaron Treadwell and Officer Bennet reviewed CCTV video of the parking lot located at 3021 Naylor Road SE in Washington, D.C. At timestamps 18:36:47 to 18:36:50, the CCTV video shows the Defendant, wearing a white shirt, multi-colored shorts, and black shoes walking through the parking lot with a black dog. At timestamp 18:36:48, the Defendant turns and punches the dog, causing the dog to drop from its feet to its stomach.



*Figures 8, 9, and 10. CCTV Video of the Defendant Punching the Dog.*

At timestamps 18:39:01 to 18:39:03, the CCTV video shows the Defendant walking with a dog in the parking lot, raising his left arm in the air while holding what appears to be a firearm, and firing one round into the air.



*Figure 11. CCTV Video of the Defendant firing firearm (Circled in Red).*

Around the time of the suspected gunshot—at timestamps 18:39:02 to 18:39:03—the CCTV video shows an individual reacting to the sound of the gunshot from across the street.



*Figures 12, 13, and 14. CCTV Video of Individual Reacting to Gunshot (Circled in Red).*

Officers canvassed the area and discovered a single 9mm cartridge casing in the parking lot. The cartridge casing was found in the area near where the Defendant was located in the CCTV video with his arm raised in the air.



*Figures 15, 16, and 17. Cartridge Casing Recovered on Scene (Circled in Red).*

7D Crime Scene Officer Arshad recovered the cartridge casing from the scene. The cartridge casing had a head stamp labeled "9mm Luger CBC." The ammunition inside the tan firearm that was recovered from the Defendant's waistband also had a head stamp labeled "9mm Luger CBC."



*Figure 18. Photograph of Head Stamp of Cartridge Casing Recovered on Scene*

As noted above, the Defendant was previously convicted of Assault Second Degree in Prince George's County, Maryland and sentenced to ten (10) years of confinement with seven (7) years suspended.

The Defendant was ultimately placed under arrest for Assault on a Police Officer, Carrying a Pistol Without a License (Outside Home or Place of Business), Possession of a Large Capacity Ammunition Feeding Device, Possession of an Unregistered Firearm, Endangerment with a Firearm (Public Place), Possession of Unregistered Ammunition, Cruelty to Animals, and Resisting Arrest.

**LEGAL AUTHORITY & ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C.

10

§ 3142(e). When the basis for pretrial detention is the defendant's danger to the community, the government is required to demonstrate the appropriateness of detention by clear and convincing evidence, *United States v. Sabol*, 534 F. Supp. 3d 58, 65 (D.D.C. 2021), whereas a determination that an individual is a flight risk must be supported by a preponderance of the evidence. *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Bortis*, 785 F.2d 327, 328-29 (D.C. 1986)).[3]

In making the pretrial detention determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210 and *Williams*, 798 F. Supp. at 36.

1.      **The United States' Bases for Detention**

The United States seeks detention pursuant to § 3142(f)(1)(E) (felony involving possession of a firearm), because the Defendant is charged with a violation of 18 U.S.C. § 922(g)(1).

---

[3] Not relevant here, the Act also provides a rebuttable presumption for certain crimes that no conditions or combinations of conditions will assure the safety of the community. 18 U.S.C. § 3142(e).

**2.      The Bail Reform Act Factors All Favor Detention Given the Defendant's Dangerousness to the Community**

When determining whether any condition or combinations of conditions will assure the Defendant's appearance and the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release.  *See* 18 U.S.C. § 3142(g). Each of these factors weigh in favor of pretrial detention in this case.

As set forth below, the Defendant possessed a firearm on July 30, 2026 despite a conviction that makes it illegal for him to possess a firearm. The manner in which the Defendant possessed and used his firearm is particularly concerning. This is not a mere possessory offense. Rather, the Defendant actively used his firearm during the course of events of that day. Such conduct towards strangers demonstrates the dangerousness the Defendant poses to the community. The Defendant's conduct in this case alone establishes by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.

### A.      The Nature and Circumstances of this Offense Merits Detention.

The nature and circumstances of the charged offense weigh heavily in favor of pretrial detention in this case.  The Bail Reform Act explicitly identifies offenses involving firearms as serious in nature.  *See* 18 U.S.C. § 3142(g). The Defendant is currently charged with illegal possession of a firearm on July 30, 2026; however, the facts as presented above show that the Defendant was also unlawfully <u>using</u> the firearm.

First, the Defendant started yelling obscenities at a complete stranger. And, while the stranger was walking away, the Defendant pulled out the firearm and pointed it at her. While that

victim did not see the firearm itself, another eyewitness observed the Defendant produce the firearm and point it at the victim. Second, after roaming around the parking lot and assaulting his dog, the Defendant pulled out the firearm a second time, pointed it in the air, and fired one round. Moreover, as he was being stopped by law enforcement, the Defendant appeared, again, to reach for his firearm before resisting being handcuffed by officers.  Moreover, the firearm recovered from the Defendant is a P80 9mm handgun with no serial number, which is commonly referred to as a "ghost gun."

Further supporting the seriousness of the offenses charged, if convicted at trial, the Defendant faces a lengthy term of incarceration, including up to 10 years of incarceration if convicted of 922(g)(1).

### B.      The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, favors detention.[4]  As outlined in detail above, the firearm was recovered from the Defendant's person—hanging out of his shorts' pocket. Moreover, CCTV footage recovered by law enforcement shows the Defendant, wearing unique clothing and walking his dog, raise his left hand into the air and fire one round. The discharging of the firearm is supported by an eyewitness who reported hearing a "pop" sound,

---

[4] While some judges in this Court have indicated that this factor should be given less weight, in *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."  2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are— in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."  *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

the visible reaction of an individual walking down the sidewalk in the CCTV video, and the recovery of an ammunition shell cartridge near where the Defendant is seen firing the weapon. Moreover, the firearm recovered from the Defendant's person was missing one round of ammunition, and the recovered ammunition shell cartridge was of the same caliber and had the same head stamp as the ammunition recovered from the firearm on the Defendant's person.

The evidence against the Defendant, therefore, is extremely strong. As this Court has noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that the defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).   Accordingly, the strength of the evidence against the Defendant also weighs in favor of detention.

### C.      Defendant's History and Characteristics Merit Detention.

This third factor, the history and characteristics of the Defendant, heavily favors detention. The Defendant has been arrested 37 times, which has resulted in 20 convictions in the past 25 years, as shown in Figure 19.

14



*Figure 19. Chart of the Defendant's Convictions from 2001 to 2025.*

Of those 20 convictions, 9 involve assaultive behavior or weapons-related offenses, including the following:

| Arrest Date | Conviction | Jurisdiction |
|---|---|---|
| Aug. 27, 2017 | Simple Assault / Assault and Battery | Alexandria, Virginia |
| Aug. 8, 2017 | Simple Assault | District of Columbia |
| Aug. 19, 2017 | Assault | Alexandria, Virginia |
| Oct. 17, 2016 | Concealed Weapon | Arlington, Virginia |
| Nov. 9, 2014 | Assault & Battery | Arlington, Virginia |
| April 30, 2012 | Assault Second Degree | Prince George's County, Maryland |
| Mar. 18, 2010 | Simple Assault | District of Columbia |
| Jan. 5, 2006 | Assault-Second Degree | Prince George's County, Maryland |
| July 22, 2004 | Family Violence Battery | Rockdale County, Georgia |

Notably, despite the Defendant's age, he continues to accumulate arrests and convictions indicating he appears unwilling—or unable—to abide by the law. Dozens of prior periods of supervision have failed to keep the community safe from the Defendant's conduct. Consequently, this factor weighs heavily in favor of detention and makes clear that detention is necessary to ensure the safety of the community.

**D.      The Danger to the Community Created by the Defendant's Release Weighs in Favor of Detention**

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno,* 481 U.S. 739, 755 (1987)).  This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence.  *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

The Defendant's criminal history—which includes 37 arrests and 20 convictions—demonstrates that the courts and criminal justice system will not deter further criminal conduct by the Defendant if released in this case.

Moreover, a concerning pattern running through the Defendant's conduct on July 30, 2026 is the senselessness of his actions: yelling at and pointing a gun at a stranger without provocation; roaming aimlessly around the parking lot, then pulling out the gun and firing a round in the air; and spontaneously punching the dog. The randomness of the Defendant's actions towards complete strangers undermines the ability of the Court to fashion conditions, such as a stay away from a particular person or location.

This factor, along with the other three factors, weighs in favor of the Defendant's detention without bond pending trial to ensure the safety of the community.

16

**<u>CONCLUSION</u>**

Because all four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, the United States respectfully requests that the Court issue an Order granting the United States' motion that the Defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By:   /s/ *Charles Klug*
CHARLES KLUG
D.C. Bar No. 1619775
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
202-730-6872
Charles.Klug@usdoj.gov
